UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY KOLTYS,<br><br>    Plaintiff,<br><br>    v.<br><br>FRANK BISIGNANO,<br><br>    Defendant. | Case No. 25-cv-04028-SI<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 19 |

Before the Court is the motion by defendant Frank Bisignano, Acting Commissioner of the Social Security Administration's ("SSA"), to dismiss for improper venue, or in the alternative, to transfer to the Central District of California. Dkt. No. 19 ("Mot."). Defendant also moved to dismiss claims under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). Plaintiff Henry Koltys filed an opposition,[1] and defendant filed a reply. Dkt. Nos. 26 ("Opp'n"), 31 ("Reply"). Pursuant to Civil Local Rule 7–1(b), the Court finds this matter suitable for disposition without oral argument and therefore VACATES the hearing scheduled for January 9, 2026. Having considered the parties' papers, and for good cause found, the Court hereby DENIES the motion to dismiss for improper venue, GRANTS the motion to transfer venue, and TRANSFERS this action to the Central District of California. The Court does not rule on the motion to dismiss under Rules 12(b)(1) and 12(b)(6).

**BACKGROUND**

Plaintiff, an Administrative Law Judge ("ALJ") who lives in Montecito, California, brings

---

[1] Plaintiff originally filed his opposition on September 26, 2025 at Dkt. No. 22. Shortly thereafter, the Court granted defendant's motion to stay the case due to the government shutdown. Dkt. Nos. 24, 25. On October 17, 2025, plaintiff refiled his opposition and a notice of errata at Dkt. No. 26.

1    this employment discrimination action against the Social Security Administration ("SSA"), alleging
2    discrimination based upon his disability, sex, and age, and retaliation due to his reasonable
3    accommodation requests. Dkt. No. 1 ("Compl.") ¶¶ 1, 12. Plaintiff is seventy-three years old and
4    has worked as an ALJ for the SSA's Office of Hearings Operations ("OHO") in Santa Barbara,
5    California since March 2015. *Id*. ¶¶ 1, 2, 15, 19. Plaintiff has hereditary hematology and pulmonary
6    disorders that have caused blood pulmonary embolism (blood clots in his lungs). *Id*. ¶ 2. Plaintiff
7    alleges that his medical history of near-fatal pulmonary emboli coupled with his age could cause
8    death if he contracts Covid. *Id*. In 1991, plaintiff suffered a twenty percent spinal fracture of his
9    L1 vertebrae from an accident and works lying on his back as a result. *Id*. ¶ 16.

10    Before the Covid-19 pandemic, Plaintiff conducted in-person hearings using a reclining
11    chair and stand to hold his laptop computer. *Id*. ¶¶ 19, 20. Defendant closed all OHO offices due
12    to the Covid-19 pandemic from approximately February 2020 until October 2021, during which
13    time ALJs conducted only virtual hearings via telephone and video. *Id*. ¶ 22. On July 24, 2020,
14    plaintiff filed a reasonable accommodation ("RA") request to continue conducting only virtual
15    hearings after defendant reopened courtrooms post-Covid, which defendant denied. *Id*. ¶ 9; Dkt.
16    No. 19-1. Exs. 4, 5, 6. Plaintiff then filed an equal employment opportunity ("EEO") complaint
17    against defendant with defendant's Office of Civil Rights and Equal Opportunity ("OCREO") on
18    February 11, 2023. *Id*. ¶ 10; Dkt. No. 19-1, Ex. 8. Defendant issued a Final Agency Decision
19    ("FAD") denying plaintiff's reasonable accommodation request on November 17, 2023. *Id*. ¶¶ 11,
20    26; Dkt. No. 19-1, Ex. 10. Plaintiff filed an appeal to the Equal Employment Opportunity
21    Commission ("EEOC"), and the EEOC issued a decision upholding defendant's position on
22    February 10, 2025. *Id*. ¶ 11; Dkt. No. 19-1, Ex 11.

23    Plaintiff contends that defendant has failed to provide plaintiff with the reasonable
24    accommodation of conducting 100 percent virtual hearings but has assigned 100 percent virtual
25    hearings to ALJs who are not disabled, younger, and female. *Id*. ¶ 3. Plaintiff also alleges that
26    defendant has failed to provide plaintiff with the reasonable accommodations of a modified or larger
27    courtroom or other venue with protected indoor air quality. *Id*. ¶ 4. Plaintiff further claims that
28    defendant has retaliated against him due to his reasonable accommodation requests. *Id*. ¶ 1.

Plaintiff brings claims under the Rehabilitation Act, 29 U.S.C. § 791; the Age Discrimination Employment Act of 1967, 29 U.S.C. § 621 ("ADEA"); and the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Defendant moves to dismiss the action based on improper venue, failure to state a claim, and failure to exhaust administrative remedies, or alternatively, to transfer the action to the Central District of California.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(3)

A defendant may move to dismiss a case for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406. Where, as here, a defendant challenges venue, "the plaintiff bears the burden of showing that venue is proper." *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1020 (N.D. Cal. 2016) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). When considering a Rule 12(b)(3) motion, the court need not accept as true all allegations in the complaint and may consider facts outside the pleadings. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

If the initial venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer the case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991). The interest of justice ordinarily requires transferring the case to the proper venue rather than dismissing the case. *Baeta v. Sonchik*, 273 F.3d 1261, 1264-65 (9th Cir. 2001).

### II. Transfer Under 28 U.S.C. § 1404(a)

If the court finds that initial venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted).

3

An action may be transferred to another court if: (1) venue is proper in the transferor district; (2) the transferee district is one where the action might have been brought; and (3) the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice." *Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007). Section 1404(a) "does not condition transfer on the initial forum being 'wrong.'" *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 59 (2013). Rather, district courts have "discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The moving party bears the burden of showing that the transferee district is the "*more* appropriate" forum. *See id.* at 499.

In weighing the interests of convenience and justice, the Ninth Circuit requires that courts consider a variety of factors. *See Jones*, 211 F.3d at 498. Factors include: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014).

## DISCUSSION

### I. Venue is Proper in this District

The relevant venue statute states that a civil action against a federal officer may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).

Because neither defendant[2] nor plaintiff resides in the Northern District, the dispute in the

---

[2] Plaintiff states that defendant has not provided evidence to demonstrate that defendant does not reside in the Northern District of California. Opp'n at 12. The Court has no trouble finding that defendant does not reside in the Northern District. The presence of a regional office in a district is insufficient to establish residence. *See, e.g., Rugila v. Mayorkas*, 2024 WL 1446457 * 1 (N.D. Cal. April 2, 2024); *Williams v. United States*, No. C-01-0024 EDL, 2001 WL 1352885, *1 (N.D. Cal.

4

instant case is whether "a substantial part of the events or omissions giving rise to the claim occurred" in this District. Plaintiff argues venue in proper in the Northern District of California because a substantial part of the events and omissions giving rise to the complaint occurred in defendant's regional headquarters in San Francisco. Compl. ¶¶ 7-9; Opp'n at 3. Specifically, plaintiff argues that the decision to deny plaintiff's RA request was made by Regional Chief Administrative Law Judge ("RCALJ") Jennifer Horne and several supporting employees, all located in San Francisco. Opp'n at 3, 6; Dkt. No. 22-1, Exs. 3 & 5. While plaintiff acknowledges that National Reasonable Accommodation Coordinator ("NRAC") Rachel Urdan, located in Maryland, adopted the RA denial drafted by RCALJ Horne's staff, he asserts venue is proper here because Judge Horne "began the RA denial process by refusing to approve the RA request." *Id.* at 6.

Defendant argues that venue is improper in the Northern District of California because only NRAC Rachel Urdan, located in Baltimore, had the delegated authority to deny plaintiff's RA request. Mot. at 11; Dkt. No. 19-1, Exs. 10 at 6, n.6 & Ex.6. Therefore, as defendant would have it, RCALJ Horne and her staff "did not actually take any of the actions that form the basis for [p]laintiff's complaint." *Id.* at 11.

The Court agrees with plaintiff that a substantial part of the events giving rise to plaintiff's claim occurred in the Northern District. The substantiality inquiry "focuses on the relevant activities of the defendant, not of the plaintiff." *See Knuttel v. Omaze, Inc*. 572 F.Supp.3d 866, 869 (N.D. Cal. 2021) (internal quotation marks and citation omitted). Section 1391 does not limit venue to the district where *the most* substantial events or omissions giving rise to the action occurred. *See, e.g.*, *Ward v. Certain Underwriters at Lloyd's of London*, 2019 WL 2076991 *5 (N.D. Cal. May 10, 2019); *Ibrahim v. Chertoff*, 2007 WL 1558521 * 5 (S.D. Cal. May 25, 2007); *Adab v. United States Citizenship & Immigr. Servs.*, 2015 WL 6249563 *5 (C.D. Cal. Feb. 9, 2015). Plaintiff contends, and defendant does not dispute, that RCALJ Horne and her staff located in San Francisco engaged

---

Oct. 23, 2001). It is well established that where, as here, an action is brought against a federal officer in his or her official capacity, residence exists where the federal agency is located. *See, e.g., West Coast Regional Center, Inc. v. Jaddou*, 2024 WL 3498242 * 3 (N.D. Cal. July 19, 2024) ("A federal officer's residence is determined by the location where she performs her official duties."). Defendant is deemed to reside in the District of Maryland, where the SSA is headquartered.

1    in discussions with plaintiff regarding his reasonable accommodation request and recommended
2    denial of his reasonable accommodation request to NRAC Urdan. Comp. ¶¶ 7-9, 13, 22-29; Mot.
3    at 11; Dkt. No. 19-1, Exs. 5, 6, 10; Opp'n at 6.  Once local management makes a denial
4    recommendation, the NRAC reviews that recommendation and makes a final decision. Reply at 3;
5    Dkt. No. 19-1, Ex.11 at 22-23. Plaintiff establishes management officials in San Francisco handled
6    all the initial phases of the reasonable accommodation process and recommended denial of his
7    reasonable accommodation request to NRAC Urdan. Opp'n at 6-7; Dkt. No. 22-1, Exs. 2,3,5.
8    Plaintiff also establishes that RCALJ Horne issued him an official reprimand for failing to report to
9    the OHO to conduct in-person hearings, which he alleges is a discriminatory and retaliatory act
10   giving rise to his claims. Compl. ¶¶ 33-35; Opp'n at 7; Dkt. No. 22-1, Ex. 6. The Court finds this
11   is sufficient to establish venue under 1391(e).

12   The Court rejects defendant's contentions that only the "ultimate legally relevant decision is
13   what matters for venue purposes," and that "advisory actions of an intermediate management
14   official" cannot constitute a substantial part of the events giving rise to plaintiff's claim. Reply at
15   3; *see* a*lso* Mot. at 10. The cases defendant cites do not stand for that proposition, as in each case
16   the court reasoned that venue was improper based largely on other factors. Defendant's briefing
17   relies primarily on *West Coast Regional Center, Inc. v. Jaddou*, a case involving an immigration
18   center's challenge to a federal policy. 2024 WL 3498242 * 3 (N.D. Cal. July 19, 2024). In *West*
19   *Coast*, the court found that existence of plaintiff's investment project in the district was not a
20   substantial event directly giving rise to plaintiff's claim. *Id.* ("second-level economic or social
21   impact of investments in this District is too tenuous to justify [plaintiff's] choice of venue"). Here,
22   however, the actions RCALJ Horne and her staff took at the regional headquarters in San Francisco
23   leading up to the reasonable accommodation denial are less tenuous and cannot be characterized as
24   only second-level economic or social impact.[3] The Court finds that management decisions made by

---

[3] The Court finds the other two cases defendant cites no more relevant to the question of whether the ultimate legally relevant question is what matters for venue purposes. *See Pars Equality Center v. Blinken*, 2024 WL 4700636 * 8-9 (N.D. Cal. Nov. 5, 2024) (severing claims for improper venue where there was indica of forum shopping); *Basey v. United Stated*, 2022 WL 4485817 * 5 (N.D. Cal. Sept. 27, 2022) (finding venue improper under Rule 41(g) where property at issue was not seized in this district).

6

RCALJ Horne and staff in San Francisco directly gave rise to the alleged discrimination and retaliation plaintiff challenges in this case.

Accordingly, because venue is proper, the Court rejects defendant's motion to dismiss based on improper venue.

## II.     Transfer is Appropriate Under § 1404(a)

Because venue is proper in the Northern District of California, the Court proceeds to weigh the interests of convenience and justice to determine whether transfer to the Central District of California is appropriate. Defendant argues that the Central District of California is the more appropriate venue because plaintiff resides in the Central District, the workplace plaintiff has put at issue is in the Central District, and key witnesses are in the Central District. Mot. at 12. Furthermore, defendant contends that plaintiff's choice of forum is entitled to little deference because plaintiff does not live in the Northern District and there is little connection between the facts of this case and the Northern District. *Id.*

Plaintiff primarily argues that transfer to the Central District of California is inappropriate because several "management witnesses" are in San Francisco and no relevant "management witnesses" are in the Central District. Opp'n at 7, 10-11. Plaintiff also suggests that the physical location of his place of work in the Central District is "totally irrelevant" because the case involves an OHO policy decision requiring in-person hearings. *Id.* at 7. Further, plaintiff contends that the Court should give considerable weight to his choice of venue. *Id.* at 8.

As discussed above, courts evaluate several factors in determining whether transfer is appropriate. *See Jones*, 211 F.3d at 498; *Lax*, 65 F. Supp. 3d at 776.

### A.  Plaintiff's Choice of Forum

"The plaintiff's initial choice of forum usually receives some weight, and is given substantial deference if the plaintiff is a resident of the district in which the action is brought." *Headstart Nursery, Inc. v. Palmeri*, 2018 WL 4961664, at *7 (N.D. Cal. Oct. 12, 2018) (internal quotation marks and citation omitted). However, "[t]he degree to which courts defer to the plaintiff's chosen

7

venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection to the activities alleged in the complaint." *Fabus Corp. v. Asiana Exp. Corp.*, No. C-00-3172 PJH, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001). The Ninth Circuit has held that courts should disregard a plaintiff's forum choice where the suit is a result of forum shopping. *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *see also Pars Equal. Ctr.v. Blinken*, 2024 WL 4700636 (N.D. Cal. Nov. 5, 2024).

Plaintiff resides in Montecito, California. Compl ¶ 12. Plaintiff also works for defendant in Santa Barbara, California. *Id.* ¶ 12, 15. Both cities are in the Central District of California. Plaintiff brings this case related to whether he must be physically present at the OHO courtroom there and whether defendant must make changes to its courtroom's physical infrastructure. *Id.* ¶¶ 4-5, 13, 28-33. Thus, venue in the Central District of California is proper and appropriate. Conversely, as discussed above, the only connection that plaintiff alleges this case has to the Northern District is "management decisions" related to plaintiffs' accommodation requests made by several SSA employees in San Francisco. *Id.* ¶ 13 While it appears that some relevant activities alleged in the complaint occurred in San Francisco, many of the relevant activities occurred in Santa Barbara. The Court agrees with defendant that plaintiff's choice of forum should be given considerably less weight in the venue analysis, particularly where, as here, plaintiff resides in the Central District.

Defendant also alleges that plaintiff's decision to bring this case in the Northern District of California indicates forum shopping, and there are concerning indica of forum shopping here. Mot. at 1, 6-7; Reply at 5. In response, plaintiff argues only that defendant's characterization of plaintiff as a serial litigant is "really about plaintiff's exercise of his legal rights by seeking RA's for his severe disabilities." Opp'n at 23. However, the Court's forum shopping concerns are not allayed. Prior to the Covid-19 pandemic, plaintiff filed an employment discrimination action against SSA similar to this one in the Central District of California based on the SSA's denial of his requests to transfer to the San Francisco Bay Area and to telework on hearing days, once hearings were over. *See Koltys v. Berryhill*, 2019 WL 13254073 *1 (C.D. Cal. Jan. 9, 2019). The court dismissed the case, finding that plaintiff had failed to plausibly allege discrimination or retaliation for any of his

8

claims. *Id.* at *4-6.[4]  The court also found that plaintiff had "not pled facts establishing how teleworking on partial days would enable him to perform the fundamental job duties of his position." *Id.* A similar issue of whether holding in-person hearings is an essential job duty of ALJs underlies this case. Compl. ¶¶ 19, 26.  These facts, coupled with plaintiff's residence outside of the Northern District of California, suggest that plaintiff may have filed suit here to obtain what he perceives to be a more favorable forum.

Whether or not plaintiff's choice is in fact the product of forum shopping, the Court finds that plaintiff's choice of forum merits little deference in this case given his residence in the Central District.

### B. Convenience of the Parties and Witnesses

The Court concludes that these factors weigh in favor of transfer.  Neither plaintiff nor defendant resides in the Northern District.  Plaintiff's only claim of convenience rests on his desire to depose several SSA employees located in San Francisco.  Opp'n at 7,11.  However, plaintiff makes no argument as to why he would choose to depose these witnesses in person.  Indeed, considering plaintiff is proceeding pro se and alleges that his medical needs prevent him from holding hearings in person, it seems likely that conducting remote depositions would be more convenient.  As such, the Court finds it unlikely that the Northern District of California would actually be a more convenient location for plaintiff.

Moreover, while plaintiff argues that there are no relevant witnesses in the Central District because the management decisions related to his reasonable accommodation request were made in San Francisco, the Court is not persuaded.  Opp'n at 10.  For instance, the other ALJs who defendant claims would be burdened by an increased backlog of hearings if plaintiff's request to work remotely

---

[4] In December of 2020, plaintiff also filed an unrelated Freedom of Information Act (FOIA) case against SSA and then Acting Secretary of Homeland Security Chad Wolf arising from a workplace investigation of plaintiff's alleged possession of a firearm in this district. *See Koltys v. Kijakazi*, No. 20-cv-08700-SK, 2022 WL 432441 (N.D. Cal. Jan. 28, 2022).  That case was transferred to the Central District of California due to improper venue. *Id.*  The Central District of California court then entered summary judgment in favor of defendants. *See Koltys v. Wolf*, 2022 WL 2784434 (C.D. Cal. June 7, 2022).

is granted are in Santa Barbara. Mot. at 1 & Dkt. No. 19-1, Exs. 3,6. One of these ALJs, Hearing Office Chief ALJ Aubri Masterson, is plaintiff's first-line supervisor. Reply at 4, Dkt. No. 19-1, Ex. 6. Thus, defendant demonstrates that relevant witnesses are also located in Santa Barbara, and the Central District would likely be a more convenient venue for them.[5]

### C. Ease of Access to the Evidence

The Court also concludes that this factor counsels toward transfer. The workplace at issue is in the Central District, and defendant argues that if this case were to proceed to trial, a site visit may be necessary. Reply at ¶ 5. Plaintiff's contention that the physical location of his place of work in the Central District is "totally irrelevant," Opp'n at 7, is misguided, especially considering plaintiff puts the physical characteristics of his courtroom at issue in his complaint. Plaintiff's complaint states that defendant has "refused to provide Plaintiff with the reasonable accommodations of a modified or larger courtroom[.]" Compl. ¶ 5. Plaintiff further references the reasonable accommodation request he filed regarding combining two courtrooms, a glass wall in his courtroom, and an isolated air supply system in his courtroom and chambers. *Id.* ¶¶ 30, 32.

### D. Other Factors

Plaintiff suggests that "judicial economy" counsels against transfer because this Court has "extensive experience adjudicating federal employment complaints." Opp'n at 7. The same is true of the Central District. Parties do not address the remaining factors in their briefing, and the Court finds that the remaining factors are either neutral or favor transfer.

In sum, the Court agrees with defendant that this case belongs in the Central District.

## CONCLUSION

Having weighed weigh the interests of convenience and justice, the Court concludes that

---

[5] Defendant also notes that relevant witnesses are in Maryland, including NRAC Urdan who ultimately denied plaintiff's reasonable accommodation request. Reply at 4-5; *see* Mot. at 11, Ex. 6.

transfer is appropriate. For the foregoing reasons, the Court and GRANTS defendant's motion to transfer venue. The Court does not rule on defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6).

**IT IS SO ORDERED**.

Dated: January 7, 2026

SUSAN ILLSTON
United States District Judge